***This is a nonprecedential memorandum opinion
pursuant to ORAP 10.30 and may not be cited
except as provided in ORAP 10.30(1).***

Argued and submitted January 17, affirmed April 5, petition for review denied
June 29, 2023 (371 Or 284)

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## ALEX MILES DORAN,
*Defendant-Appellant.*

Polk County Circuit Court
20CR60162; A176883

Monte S. Campbell, Judge.

Jason E. Thompson argued the cause for appellant. Also on the brief was Thompson Law, LLC.

Patricia G. Rincon, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Shorr, Presiding Judge, and Mooney, Judge, and Pagán, Judge.

PAGÁN, J.

Affirmed.

**PAGÁN, J.**

In this criminal appeal, defendant contests his convictions for unlawful use of a weapon, ORS 166.220; coercion, ORS 163.275; and menacing, ORS 163.190. Each of those offenses constituted domestic violence. Defendant raises four assignments of error. In his first assignment, defendant contends that the trial court plainly erred by failing to, *sua sponte*, instruct the jury with a uniform vouching instruction. In his second assignment, defendant contends that the trial court plainly erred by failing to, *sua sponte*, declare a mistrial or give a curative instruction for the state's closing arguments. Defendant also raises two assignments of error related to sentencing; however, those assignments are moot because the trial court amended the judgment to correct the errors while this appeal has been pending. As we conclude the trial court did not plainly err in either of the other assignments, we affirm.

We provide a brief recitation of the relevant factual and procedural background. Defendant was romantically involved with R. After an argument, defendant took a gun case out of R's bedroom nightstand and threatened to commit suicide. Defendant took a pistol out of the gun case and, while holding the gun at his side, told R that she was not allowed to leave and that she could not call 9-1-1.

At trial, a police officer testified on redirect examination that

"[R] appeared to have a—in my opinion—pretty good recollection of events and was working hard to recall things accurately. Because we would go through the interview and then she would stop and she'd go back and say, wait a minute, this is—this also happened and stuff.

"And so that's why I did bullet points, because if—if I did the—if for—for information chronologically, because if I wrote the interview like it played out it would have kind of been kind of jump around and it would have been, like, very difficult. It would be at times the subject matter would—would change briefly because she would remember something and so we'd go back to that.

"And so we went through the interview and then I clarified everything with her and got it chronological and that's

what we have here. But she—she appeared to be working very hard to recall things chronologically and accurately."

On appeal, defendant assigns error to the trial court's failure to *sua sponte* instruct the jury according to Uniform Criminal Jury Instruction 1006A—an instruction aimed at alleged vouching testimony.[1] Defendant acknowledges that that assignment is unpreserved but argues that the error is plain and that we should exercise our discretion to correct it.

For an unpreserved assignment of error to be plain,

"the error must be one of law; * * * it must be apparent, *i.e.*, the point must be obvious, not reasonably in dispute; and * * * it must appear on the face of the record, *i.e.*, the reviewing court must not need to go outside the record to identify the error or choose between competing inferences, and the facts constituting the error must be irrefutable."

*Ailes v. Portland Meadows, Inc.*, 312 Or 376, 381-82, 823 P2d 956 (1991) (internal quotation marks omitted). The claimed error is one of law. *State v. Brown*, 310 Or 347, 355, 800 P2d 259 (1990) (jury instructions reviewed for errors of law). However, even in the context of review for legal error, it was neither obvious that the officer's testimony constituted impermissible vouching, nor obvious that the trial court was obligated to give the uniform vouching instruction without a request from either party.

"Vouching refers to the expression of one's personal opinion about the credibility of a witness." *State v. Sperou*, 365 Or 121, 128, 442 P3d 581 (2019). Witnesses may not give vouching testimony, because such testimony invades the province of the jury as "sole arbiter of witness credibility." *Id.* The rule against vouching prohibits a witness from

---

[1] Uniform Criminal Jury Instruction 1006A states:

"It is for you and you alone to decide whether to believe a witness's testimony. Witnesses are not permitted to give opinions on whether another witness is, or was, being truthful in any given statement. Despite the court's efforts to prevent such testimony, a witness's testimony occasionally can be interpreted as an opinion on another witness's truthfulness in regards to a particular statement. If that occurs, you should not give any weight to the witness's opinion about the credibility of that statement. You are the sole arbiters of the facts in this case and thus must disregard any other witness's opinion about the credibility of any account of the underlying events."

making a direct comment, or one that is tantamount to a direct comment, on another witness's credibility. *State v. Murphy*, 319 Or App 330, 335, 510 P3d 269 (2022).

One hurdle defendant faces in this appeal is establishing whether it *could* be plain error for a trial court to fail to *sua sponte* include a jury instruction that addresses vouching. When we are called on to address an unpreserved claim of error regarding vouching, "our first task is to assess the challenged testimony to determine whether the witness unambiguously vouched, may or may not have vouched (ambiguous), or unambiguously did not vouch." *Id.* When a witness unambiguously vouches for another witness, we have held that a trial court must *strike* that testimony. *State v. Corkill*, 262 Or App 543, 552-53, 325 P3d 796, *rev den*, 355 Or 751 (2014). It is thus plain error for a trial court not to take that specific remedial action when unambiguous vouching testimony occurs. *Id.*

On the other hand, if a witness's testimony may or may not have been vouching, failing to strike the testimony does not constitute plain error. *Murphy*, 319 Or App at 335-36. The lack of objection in such instances prevents clarification of the testimony, and therefore, generally presents a reasonable dispute as to whether the witness impermissibly vouched. *State v. Harrison*, 267 Or App 571, 576-77, 340 P3d 777 (2014), *rev den*, 357 Or 164 (2015).

Whether a statement constitutes vouching depends on the context in which it arose and the context of how it was offered at trial. *See Sperou*, 365 Or at 128 ("[C]ertain statements might be vouching in some contexts but not others."). In this case, the police officer's testimony was made during redirect examination after defendant had questioned the officer about the tendency for some victims of crimes to exhibit a "hyperfocus" that can impact a witness's ability to perceive or recall factual events. The state started redirect examination by asking "Did [R] appear to be hyperfocused as [defendant] was just talking about?" The particular testimony that defendant highlighted as vouching followed.

We understand defendant's cross-examination to be focused on whether R could accurately perceive and remember the facts due to variables like stress and where her

attention was focused. *See* OEC 602 (witness may not testify to a matter without personal knowledge of that matter); *see also State v. Lawson/James*, 352 Or 724, 744-46, 291 P3d 673 (2012) (explaining variables that impact a witness's ability to perceive and recall facts such as identity). In the context of this trial, the jury may well have understood the challenged testimony as relating to the officer's impression of R's ability to perceive and recall the events giving rise to this case in response to defendant's cross examination about a witness's ability to recall under emotional stress, not as a comment about whether the officer believed R was being truthful.[2] *See State v. Cuevas*, 263 Or App 94, 105, 326 P3d 1242 (2014), *aff'd*, 358 Or 117, 361 P3d 581 (2015) (analyzing context of challenged statement in light of what jury would have understood from the statement).

Thus, in the context of the trial and how the particular testimony arose, it did not constitute unambiguous vouching that the trial court was required to address *sua sponte*. It follows that, because the testimony was ambiguous, the legal point is not obvious and is reasonably in dispute, and therefore, any error in failing to *sua sponte* correct it is not plain. *Harrison*, 267 Or App at 577 (reasonable dispute as to impermissible vouching prevented conclusion of plain error).

Likewise, because the challenged testimony was not obvious vouching, it is not patent that the trial court was required to give the uniform vouching instruction without a request from either party. To begin, we have never held that a trial court plainly errs for failing to *sua sponte* include Uniform Criminal Jury Instruction 1006A in the final jury instructions. This is also not a case where the trial court failed to instruct on an element of a crime or a defense properly raised. *See, e.g., State v. Gore*, 280 Or App 624, 627, 380 P3d 1120 (2016) (failure to give defense of property instruction was plain error); *State v. Gray*, 261 Or App 121, 130, 322 P3d 1094 (2014) (failure to instruct jury on culpable mental

---

[2] We also note that the police officer testified that R appeared to recall events "chronologically and accurately." While time order and accuracy are generally considered components of truthfulness, if read precisely, the officer did not opine on R's truthfulness. Accuracy and truthfulness, though related, are not equivalent.

state was plain error). In this case, although the evidence could support the uniform vouching instruction if defendant had requested it, because the testimony was susceptible to being understood either as vouching or as explaining R's ability to perceive and recall facts in light of the stressful situation, it is not obvious that the trial court was required to give the instruction *sua sponte*. *See, e.g.*, *State v. Leers*, 316 Or App 762, 770, 502 P3d 1130, *rev den*, 369 Or 733 (2022) (defendant entitled to instruction if correct statement of law and supported by evidence to support giving it); *but see State v. Pauley*, 211 Or App 674, 683, 156 P3d 128 (2007), *rev den*, 345 Or 318 (2008) (failure to give jury concurrence instruction not plain error because legal point raised was not obvious).

In defendant's second assignment of error, he argues that the trial court plainly erred by not declaring, *sua sponte*, a mistrial or providing a curative instruction following certain comments from the state during closing arguments. Defendant acknowledges this assignment is not preserved, but requests plain-error review.

On plain-error review, the question for us reduces to whether the state's remarks were "so prejudicial that the only legally acceptable alternative was to grant a mistrial *sua sponte*, and that the trial court therefore committed plain error in not granting a mistrial *sua sponte*."[3] *State v. Cam*, 255 Or App 1, 13, 296 P3d 578, *adh'd to as modified on recons*, 256 Or App 146, 300 P3d 208, *rev den*, 354 Or 148 (2013). "[R]eversal may be warranted if it is beyond dispute that the prosecutor's comments were so prejudicial as to have denied defendant a fair trial." *State v. Chitwood*, 370 Or 305, 312, 518 P3d 903 (2022).

During closing arguments, the state made two contentions that defendant argues are so prejudicial that he was deprived of a "constitutionally fair trial as the due process clause of the United States Constitution requires." The

---

[3] That question is a distillation of our review for abuse of discretion in refusing a mistrial or issuing curative instruction, *see State v. Davis*, 345 Or 551, 582-53, 201 P3d 185 (2008), and plain-error review, where the claimed error must be "obvious and not reasonably in dispute." *See State v. Vanornum*, 354 Or 614, 629, 317 P3d 889 (2013).

first comment, during closing argument was "we need to hold him responsible and we need to find him guilty[.]" The second comment was during rebuttal, in which the state commented, "we need to hold [defendant] responsible" and "[w]e need to find him guilty on all three counts." Defendant highlights the state's use of the word "we" during those arguments and likens use of that word to "impermissible link-in-the-chain-of-law-enforcement arguments."

We are not persuaded. Although that kind of argument is certainly undesirable—precisely because it can confuse the role of the jury with the role of the prosecution—we cannot say that in consideration of the entirety of the state's summation and rebuttal arguments, the use of the word "we" had the effect of denying defendant a fair trial. This is not the sort of case where the state's arguments misstated the applicable law, shifted the burden of persuasion from the state to the defendant, or invited adverse inferences from a defendant's invocation of constitutional rights. *See Chitwood*, 370 Or at 316 (distortion of term "moral certainty" was a misstatement of applicable law); *State v. Mayo*, 303 Or App 525, 537, 465 P3d 267 (2020) (state's argument shifted burden to the defendant to create reasonable doubt); *State v. Soprych*, 318 Or App 306, 309-10, 507 P3d 276 (2022) (comment on a defendant's constitutional rights may prejudice right to a fair trial). Even in those extreme examples of prosecutorial misconduct, the touchstone for reversal is whether the defendant was deprived of the right to a fair trial, which has been characterized as "an exceedingly high bar." *Chitwood*, 370 Or at 328.

In any event, it is not beyond dispute that the statements, when considered in the context of the trial and the parties' arguments, were so prejudicial as to have denied defendant a fair trial, nor that the only legally permissible action for the trial court to take was to either declare a mistrial or admonish the jury. As such, any error that the trial court might have made with regard to the state's summation and rebuttal arguments was not plain.

Affirmed.